FILED
Sep 02, 2021
12:21 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Jimmy Dix, Jr.,** | ) | **Docket No. 2020-06-0716** |
| **Employee,** | ) | |
| | ) | **State File No. 41018-2019** |
| **v.** | ) | |
| **Nyrstar Clarksville, Inc.,** | ) | **Judge Kenneth M. Switzer** |
| **Self-Insured Employer.** | ) | |

---

## EXPEDITED HEARING ORDER

---

This case came before the Court on August 23, 2021, for an expedited hearing. The issues are Jimmy Dix, Jr.'s entitlement to additional medical and temporary disability benefits. He asserted that the authorized treating physician, Dr. Kurtis Kowalski, did not treat an injured hamstring but rather his preexisting osteoarthritis. Nyrstar Clarksville, Inc. countered that the doctor treated him for both conditions until placing him at maximum medical improvement. For the reasons below, the Court agrees with Mr. Dix and grants the requested medical benefits but denies temporary disability benefits at this time.

### Claim History

Mr. Dix alleged that he injured his right hamstring while changing a pump for Nyrstar on April 4, 2019. Nyrstar offered a panel, and he chose an urgent care clinic.

The doctor there ordered an MRI of his knee, which revealed a "full-thickness tear of the distal biceps femoris tendon with approximately 3 cm of retraction of the tendon margin" *and* osteoarthritis in the knee.[1] The doctor referred him to an orthopedist, and Mr. Dix chose Dr. Kowalski from a panel.

Mr. Dix saw Dr. Kowalski three times, and according to Mr. Dix, he did not treat his hamstring tear but focused only on his knee arthritis. At the first visit, Dr. Kowalski

---

[1] The medical proof showed that the tear was a hamstring tear, so the Court will refer to it in that manner.

diagnosed "right knee arthritis with probable biceps strain." He injected the knee, and prescribed Mobic. The diagnosis at the next visit was "right knee arthritis with underlying muscle strain," and Dr. Kowalski ordered physical therapy. The physical therapy order states: "reason: primary osteoarthritis of right knee." Mr. Dix underwent the physical therapy, which he testified was almost exclusively geared toward his knee.

At the final visit on August 9, 2019, Dr. Kowalski diagnosed "muscle strain with preexisting aggravation of underlying arthritis." He placed Mr. Dix at maximum medical improvement "in regards to the muscle strain," writing that "greater than 50% of his symptoms he is currently experiencing is due to the underlying arthritis of the knee." He removed all restrictions and wrote that Mr. Dix may return as needed.

Afterward, Mr. Dix told Nyrstar's plant nurse that he needed to see another doctor. She responded that Dr. Kowalski had placed him at maximum medical improvement and would not change his mind. According to Mr. Dix, she then told him he could see "any doctor he wanted."

Mr. Dix then went on his own to Dr. Philip Karpos, a physician he had seen since 2015 for his knees.

At the first visit, Dr. Karpos noted preexisting osteoarthritis in the knees but also said the "April 2019 injury represent[s] a significant hamstring tear." He recommended physical therapy for "hamstring strengthening." He took Mr. Dix off work until October 4, 2019, and then Mr. Dix could work with restrictions of sitting work only. Mr. Dix did not undergo physical therapy for hamstring strengthening, because the workers' compensation carrier did not approve it.

Mr. Dix testified that he again spoke with the plant nurse, who suggested another opinion, adding that she would arrange it. Mr. Dix attended an employer's examination with Dr. Chad Price, whose opinions mostly mirrored those of Dr. Kowalski. Dr. Price did not mention whether he considered Dr. Karpos's post-injury records.[2]

At a return visit in January 2020, Dr. Karpos again diagnosed a right hamstring tear. He wrote, "While I do not disagree that the patient has severe underlying arthritis, his work history demonstrates that he functioned at a high level despite his arthritis until his April 4, 2019, injury." Dr. Karpos continued, "He had significant and sudden deterioration with his April 2019 injury, which was [a] demonstrated hamstring tear on MRI. In my opinion, the patient's arthritis is not related to his work related injury, but his current deterioration

---

[2] Dr. Kowalski signed a declaration repeating his conclusions and willingness to see Mr. Dix again in support of Nyrstar's motion for summary judgment, which the Court heard but deferred ruling upon. In light of the conclusions reached in this order, the Court finds it appropriate to rule on that motion when Mr. Dix completes treatment.

from work function is related to his injury/hamstring tear." Dr. Karpos wrote an addendum a few days later, stating:

> [T]he sequelae of the patient's hamstring injury causing some posterior knee discomfort are in my opinion permanent. . . . The injury was in my opinion greater than 50% responsible for him being unable to return to work; however, in my opinion, the injury is not responsible for the osteoarthritis involving the right knee.

Mr. Dix testified that he asked Dr. Karpos to complete a Form C-32 and paid the fee, but the doctor, under the direction of an office manager, refused to do so because he did not see Mr. Dix as a workers' compensation patient.[3]

However, Dr. Karpos was willing to respond to a letter from Nyrstar's attorney, in which Nyrstar asked, "While you felt [Mr. Dix] could benefit from aggressive hamstring therapy, you do not dispute Dr. Kowalski's and Dr. Price's finding that anatomically, he was at maximum medical improvement as of August 9, 2019, correct?" Dr. Karpos checked "yes."[4]

Mr. Dix testified he has neither worked nor received temporary disability benefits since August 10, 2019. He does not believe he would pass a "fit for duty" examination and said he cannot do his job because it requires frequent stair climbing. He further stated that the witnesses Nyrstar disclosed before the hearing could have supported his request, but they did not appear. Mr. Dix did not subpoena them.

Mr. Dix requested that the Court order Nyrstar to pay for a return to either the urgent care physician or designate Dr. Karpos as the authorized treating physician. He also requested temporary disability benefits.[5] He repeatedly contended that Dr. Kowalski only treated his preexisting arthritis and not the hamstring tear.

---

[3] As explained in an April 26, 2021 status hearing order, Dr. Karpos may complete form C-32. *See* Tenn. Code Ann. § 50-6-235(c)(1) ("Any party may introduce direct testimony from *a physician*[.]") (2020). The statute does *not* state that only physicians who are authorized under workers' compensation may complete the form.

[4] The three-page letter contains eight paragraphs of background information. Mr. Dix objected to the letter's admissibility. The Court admitted it into evidence as a signed medical record. *See* Tenn. Comp. R. and Regs. 0800-02-21.-15(2) (August, 2019). The Court gives the letter little weight, as it contains hearsay, leading questions, and misstatements of law. For example, Nyrstar wrote in the letter that Dr. Karpos's opinion on medical necessity is presumed correct. It is not, because Mr. Dix did not choose Dr. Karpos from a panel.

[5] Mr. Dix additionally seeks lifetime medical benefits, which the Court may not award at an expedited hearing. *See* Tenn. Code Ann. § 50-6-239(d)(1).

Nyrstar countered that it has provided all the benefits to which Mr. Dix is entitled. It asserted that Dr. Kowalski appropriately treated the work-related "muscle strain" and that Dr. Price agreed with Dr. Kowalski. Mr. Dix may return to Dr. Kowalski, but Nyrstar is unwilling to either authorize treatment with Dr. Karpos or additional physical therapy. As for temporary disability benefits, Nyrstar asserted that Mr. Dix chose not to attempt a fit-for-duty exam, and it was under no obligation to offer accommodations because Dr. Kowalski placed no restrictions when he assigned maximum medical improvement.

## Findings of Fact and Conclusions of Law

Mr. Dix must show he would likely prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Turning first to Mr. Dix's request for additional medical benefits, under Tennessee Code Annotated section 50-6-204(a)(1)(A), Nyrstar must provide medical treatment made reasonably necessary by the work accident. To accomplish this, it must offer a panel of three physicians. Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). Mr. Dix chose Dr. Kowalski from a panel.

As a panel physician, Dr. Kowalski's opinion of medically necessary treatment is presumed correct under Tennessee Code Annotated section 50-6-204(a)(3)(H).[6] So, his opinion on the need for additional treatment for the "muscle strain" and preexisting osteoarthritis is presumed correct. Dr. Kowalski has concluded the need no longer exists.

That conclusion does not mean that Nyrstar has satisfied its obligation to provide treatment for Mr. Dix's *hamstring*. Dr. Kowalski's records contain no statements suggesting that he treated the hamstring tear. Rather, Dr. Kowalski injected the knee and prescribed Mobic. Moreover, the physical therapy order stated "reason: primary osteoarthritis of right knee." Dr. Kowalski's focus on the knee and his opinion that Mr. Dix's problems are primarily related to it does not mean that Mr. Dix did not injure the hamstring as well.

Although Dr. Price agreed with Dr. Kowalski, the Court affords Dr. Price's opinion minimal weight because it is unclear whether he considered Dr. Karpos's records. Further,

---

[6] Both parties argued that Tennessee Code Annotated section 50-6-204(a)(3)(I) applies, so that Dr. Kowalski's opinion may be rebutted only by clear and convincing evidence. This is inaccurate because Dr. Kowalski's records did not state that his treatment follows the ODG Guidelines. *See also Morgan v. Macy's,* 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *17-18 (Aug. 31, 2016) (where a party establishes by expert medical evidence that the recommended treatment "explicitly follows the treatment guidelines," then the burden shifts to rebut the presumption of medical necessity by clear and convincing evidence).

Nyrstar's counsel suggested that Dr. Kowalski's references to Mr. Dix's "muscle strain" are synonymous to the hamstring tear. However, he offered no proof on that point. The Appeals Board has stated that "parties and their lawyers cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments." *Lurz v. Int'l Paper Co.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17 (Feb. 14, 2018). Dr. Kowalski's opinion is ambiguous on the issue of the "muscle strain."

In contrast, Dr. Karpos, who treated Mr. Dix before and after the accident, found that in addition to longstanding, non-work-related osteoarthritis, Mr. Dix needs aggressive hamstring therapy for that separate and distinct injury. He noted that the arthritis did not interfere with Mr. Dix's ability to perform his job before the work accident. Dr. Karpos described the tear as "significant" and said it was demonstrated by the MRI results. He found that the hamstring injury was causing some posterior knee discomfort, it was permanent, and was "greater than 50% responsible for him being unable to return to work[.]" He also clarified that the hamstring injury did not cause the right knee osteoarthritis. Dr. Karpos's opinion is unambiguous.

In *Limberakis v. Pro-Tech Security, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53 (Sept. 12, 2017), the Appeals Board affirmed the trial court's decision to award additional medical benefits. The Board held that an employer cannot "unilaterally terminate an employee's entitlement to reasonable and necessary medical benefits following a compensable work injury." Instead, an injured worker "remains entitled to reasonable and necessary medical treatment causally-related to the work injury[.]" *Id.* at *6-7. The Board concluded that, at an expedited hearing, a trial court may order additional medical benefits−the provision of another panel−where an employer has acknowledged that an employee's claim is compensable and is entitled to any reasonable and necessary medical treatment causally-related to the work accident, but the designated authorized treating physician refuses to see the employee. *Id.* at *9-10.

The facts here are somewhat similar to *Limberakis*. The Court finds that Mr. Dix credibly testified that he injured his right hamstring, Dr. Kowalski never treated it, and the need for treatment remains. Dr. Karpos's opinion supports Mr. Dix's contention that he injured his hamstring and it was not treated. Nyrstar neither disputed compensability nor Mr. Dix's entitlement to reasonably necessary treatment. Though Dr. Kowalski has not refused to see Mr. Dix, he has yet to provide treatment for the hamstring injury. Mr. Dix requested that Dr. Karpos be designated the authorized treating physician. But *Limberakis* makes it clear that when an authorized physician is willing to see the injured worker, then that physician should provide further treatment.

Finally, Mr. Dix requested temporary disability benefits. He must show: (1) that he became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and the inability to work; and (3) the duration of the period

of disability. *Woodard v. Freeman Expositions, LLC,* 2021 TN Wrk. Comp. App. Bd. LEXIS 21, at *6-7 (July 16, 2021).

Here, Dr. Kowalski has yet to give an opinion on whether Mr. Dix became disabled from working due to the torn hamstring, he has not determined the duration of disability, and he placed no restrictions beyond August 9, 2019. On this record, the Court cannot order these benefits at this time.

In summary, the Court holds Mr. Dix would likely prevail at a hearing on the merits that he is entitled to treatment of his hamstring injury, but he has yet to show entitlement to temporary disability benefits.

**IT IS, THEREFORE, ORDERED AS FOLLOWS:**

1. Nyrstar shall authorize additional treatment for the hamstring injury with Dr. Kowalski under Tennessee Code Annotated section 50-6-204(a)(1)(A).

2. Mr. Dix's request for temporary disability benefits is denied at this time.

3. This case is set for a status hearing on **October 18, 2021, at 10:15 a.m. Central Time.** You must call 615-532-9552 or toll-free 866-943-0025 to participate. Failure to call might result in a determination of the issues without your participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED September 2, 2021.**


_Kenneth M. Switzer_

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical record:
1. Petition for Benefit Determination and attached pleadings; no supporting documentation.
2. Request for Scheduling Hearing
3. Dispute Certification Notice and Employee's Additional Issues
4. Order on Scheduling Hearing
5. Request for Expedited Hearing
6. Pretrial Hearing Order
7. Employer'/Carrier's Brief (Amended, July 13, 2021)
8. Order Continuing Expedited Hearing
9. In Response to Employer Expedited Hearing Statement
10. In Response to Order Continuing Expedited Hearing
11. Mr. Dix's Objection to Dr. Karpos's Causation Letter

Evidence:
1. Affidavit of Mr. Dix
2. Form C-42
3. MRI Right Knee (report only)
4. Medical records
5. Declaration, Dr. Kowalski
6. Declaration, Dr. Price
7. Declaration, Ms. Randle
11. Dr. Karpos's causation letter

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on September 2, 2021.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|------|------|------|------|
| Jimmy Dix, Jr., self-represented Employee | X | | X | 493 Bellamy Ln. Clarksville TN 37043 meishadix@gmail.com |
| B. Duane Willis, Employer's Attorney | | | X | dwillis@morganakins.com plunny@morganakins.com |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*